483 So.2d 363 (1986)
Jimmy POWELL a/k/a Jamel Hobson
v.
STATE of Mississippi.
No. 55294.
Supreme Court of Mississippi.
February 12, 1986.
Robert R. Rester, Harrell & Rester, Brandon, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., HAWKINS and ROBERTSON, JJ.
HAWKINS, Justice for the Court:
Jimmy Powell, also known as Jamel Hobson, appeals from his conviction of armed robbery in the circuit court of Rankin *364 County and sentence to life imprisonment. We affirm.
The only issue we discuss is whether the circuit judge erred in permitting the state to impeach Powell's testimony on cross-examination by use of confessions which the court had ruled inadmissible in the state's case-in-chief. Under the facts of this case, for the reasons stated, we deem the cross-examination proper.
Powell's assignment that the verdict of the jury is contrary to the weight of the evidence does not merit discussion.

FACTS
On Thursday, June 30, 1983, during the noon lunch hour, a masked gunman robbed the Richland branch of the Central Bank of Mississippi, located on Highway 49 South in Rankin County, of $27,597.00. Three bank employees were in the bank at the time. The robber left an empty pillow case. None of the employees was able to identify the robber.
On July 8 Powell gave a confession to law enforcement authorities reduced to writing, and on July 11, 1983, he gave two additional statements to the authorities, likewise reduced to writing.
On July 14, 1983, the grand jury of Rankin County indicted Powell, Arthur Sutton and one Kenny Adams, also known as Kenny Taylor, for this robbery, in violation of Miss. Code Ann. § 97-3-79 (1972).
M.C. Horton testified for the state that Powell told him prior to the robbery he was going to steal a car and rob a bank, and on the evening news following the robbery, when a red and white Ford automobile used in the robbery was flashed on the television screen, Powell told him that was the car he had used. Horton's brother, Jerry, also testified to hearing Powell make the statement that the car shown on the television news program was the car that he had used in the robbery. There is no necessity to detail the evidence; there was sufficient evidence, aside from confessions to make a jury issue on the guilt of Powell.
In the state's case-in-chief, the circuit judge conducted a hearing in chambers to determine whether the confessions were freely and voluntarily given and met the conventional tests on this question.
All three confessions were made in Rankin County. The time and identity of the persons present (besides Powell) at each confession are as follows:
FIRST CONFESSION
EXHIBIT D-2

Time:
8:00 p.m., Friday, July 8, 1983 (began) Saturday, July 9, 1983 (ended)

Persons present:
(1) Kenneth Dickerson, Chief Deputy Rankin County Sheriff's Department
(2) David S. Cavanaugh, Special Agent Federal Bureau of Investigation
(3) Willie H. Covington, Special Agent Federal Bureau of Investigation
(4) Timothy Munson, Special Agent Federal Bureau of Investigation (in and out during questioning)
(5) Morris Atkinson, Chief of Police City of Richland
SECOND CONFESSION
EXHIBIT D-3

Time:
1:20 p.m., Monday, July 11, 1983

Persons present:
(1) Kenneth Dickerson, Chief Deputy Rankin County Sheriff's Department
(2) J.G. (Jimmy) Dixon, Lieutenant Jackson Police Department
(3) Jimmy D. Boxx, Investigator Bureau of Criminal Investigation Mississippi Department of Public Safety
(4) Joseph S. (Joey) Gounce, Investigator Bureau of Criminal Investigation Mississippi Department of Public Safety

*365 THIRD CONFESSION
EXHIBIT D-4

Time:
2:34 p.m., Monday, July 11, 1983

Persons present:
(1) Kenneth Dickerson, Chief Deputy Rankin County Sheriff's Department (in and out during questioning)
(2) Joseph S. (Joey) Gounce, Investigator Bureau of Criminal Investigation Mississippi Department of Public Safety
(3) Jimmy D. Boxx, Investigator Bureau of Criminal Investigation Mississippi Department of Public Safety
In the first two confessions Powell admitted to being the person who actually robbed the Richland branch bank. In the third and last confession, he detailed his assistance to Sutton in the robbery of another Mississippi bank, and likewise admitted robbing the Richland bank. A large portion of the third confession would have been inadmissible on the ground of relevancy, and the part confessing to robbing the Richland branch bank was simply a repetition of the first two confessions.
At the hearing in chambers, Dickerson testified all three confessions were freely and voluntarily given, and the appropriate Miranda warnings had likewise been given Powell. The state then rested on the issue.
Powell then testified that he gave the first statement because he had been abused at the Hinds County Jail before being transported to the Rankin County Jail. He testified as follows:
Q. Would you explain to the court why you signed it?
A. Well, at the time of my arrest, you know, I got picked up and I was brought first to the Jackson City Jail and where I was abused, you know.
Q. Alright [sic], would you tell the Court what abused means?
A. Well, specifically speaking, being jumped on by about four police officers.
Q. Okay, do you know who they were?
A. It was one lieutenant, I think it was Dickerson from the Jackson lieutenant [sic], the one from the Jackson Police Department, one of the county officers, the one that brought me over there, two Hinds County officers. That exactly four, right.
Q. Alright [sic]. And was it because of this that you signed that statement?
A. Yes sir. Because I was instructed that I better go over and tell these people over here whatever they wanted to know. If I didn't, you know, they threatened to bust my head and my rib cage and all that, you know, so.
Q. And had they physically struck you?
A. Yes sir. I came over here, I was really kind of hurt up, you know.
* * * * * *
Q. Okay. By going along, what do you mean?
A. Well, just like I say, you know, I was instructed that if I didn't tell them exactly what they wanted to know and this and that and the other and go along with them, that I was going to be really hurt up, you know, so I didn't know what to think. And I asked for a lawyer and I was turned down, so.
Q. Now, to whom did you address the question for a lawyer to?
A. Chief Dickerson, and at the time of interrogation, it was the FBI man was there, Mr. Covington, I believe it was. And I don't know the other gentleman's name, but it was about five of them in the room.
Q. Alright [sic]. Now, the words written on that piece of paper, did they come out of your head?
A. No sir. No sir.
Q. Who thought those words up?
A. Just like I say, when I got arrested, they, when it come down to the statement, they was telling me how the bank is supposed to have been robbed. So, you know, they, in other *366 words, they put the words out there.
Vol. I, pp. 102-104.
Powell also testified he did not sign either of the last two statements.
Following Powell's testimony, the state called Covington, Cavanaugh, Munson, Gounce, Boxx, Dixon, Dickerson and S.M. McGee of the Hinds County Sheriff's Office. All these officers testified no threats had been made, Powell was not struck or abused in any manner in their presence, that he had made no complaint of being abused and showed no signs of having been injured in any manner. They denied his ever asking for an attorney in their presence. Their testimony was that the appropriate Miranda warnings had been given. Three typed Miranda warnings, all signed by Powell, were offered into evidence at the hearing.
With the presentation of this evidence, the state had produced every officer who was present during the questioning of Powell and Powell's signing all three confessions with the sole exception of Atkinson, who was present when the Federal Bureau of Investigation agents took his first confession.
The state informed the court that Atkinson was attending police school in Louisville, Kentucky. The court was informed that Atkinson had been called and offered a plane trip to Mississippi, but declined, saying he had suffered a heart attack some years previously and was afraid to fly. The court observed in chambers he had some question on the admissibility of the confessions, but on the confessions which Powell denied signing, a different question might arise.
After an overnight recess, the state informed the circuit judge that Atkinson had again been contacted, and asked to come, but Atkinson replied he was attending a chiefs of police convention and was scheduled to make a speech, and that he was bound to meet his obligation there. The state further related that Atkinson said he had discussed the matter with the mayor of Richland. The district attorney informed the court that he had related to Atkinson the gravity of the situation and the importance of his appearing as a witness. Atkinson had not been placed under subpoena prior to trial.
The state offered to put on officers who transported Powell to the Rankin County Jail. The court then ruled that it was incumbent upon the state to produce Atkinson as a witness in order to make the first confession admissible and since the second and third confessions followed so closely in time to the first one, they likewise were inadmissible.[1]
The state thereupon presented its case-in-chief without the confessions, and rested.
Powell took the stand in his own defense. He testified that at the time of the robbery he was in the Capitol City Body Shop in Jackson, borrowing a car from one Billy Ray Gibson. He denied robbing the bank, as well as denied participating in any manner in the robbery. As to the automobile used in the robbery, he testified:
Q. Now, you heard some testimony on a red and white Ford automobile. Tell the jury what you know about that car.
A. I know nothing about that car. Nothing.

*367 Q. What statements have you made to anyone concerning that car?
A. Other than the police, none.
Vol. II, p. 255.
On cross-examination the state first sought to cross-examine Powell that he had admitted to officers that he had robbed the bank. An objection was made and the court excused the jury. The record reveals the following in chambers colloquy:
BY JUDGE GOZA:
What do you say to the proposition that in response to your question, have you made any statements to anyone concerning the automobile? The defendant testified: "None, other than to the police." What do you say to the proposition that opens the door for further cross-examination on that point?
BY MR. ROBBINS:
On the automobile, yes sir. But that would be it. Only to an automobile. And it would be under micro analysis of that one thing, the automobile. And not to anything. It wouldn't be macro, just wide open to anything.
BY JUDGE GOZA:
Alright [sic]. Mr. Craft, what is the State's position?
BY MR. CRAFT:
Your Honor, and I hesitate to bring it up, because I don't have a citation, but I'm going to give the best recollection of some language used in some case that the Supreme Court has spoken to this issue. They said that the Fifth Amendment and the Sixth Amendment rights that are now given after the Miranda versus Arizona decision were intended to protect a defendant from having evidence admitted against him that was taken in violation of those constitutional rights. That intended to protect him from a wrong by the police involved. That was to act as a shield for his rights. But, let me think, it was not designed as a sword to be turned into a sword to shield him and allow him to perjur [sic] himself and then the truth of the matter not be brought forward in rebuttal.
BY JUDGE GOZA:
It'll be the ruling of the Court at this point that the objection is overruled and the State may cross-examine the defendant in regard to any statements he made to the police in regard to the red and white automobile. Gentlemen, I would expect you to renew objections from time to time in order to see how wide the scope is. Mr. Purvis, you may bring the jury back in.
BY MR. ROBBINS:
Let the record reflect we have a continuing objection to anything other than the automobile.
BY JUDGE GOZA:
You may have a continuing objection, but I think for the record, John, you should call it to my attention as it develops.
Vol. II, pp. 261-262.
On cross-examination Powell at first denied that he had confessed to stealing the car. On further cross-examination he denied making any of the incriminatory statements contained in the confessions. The cross-examination continued and Powell then admitted to signing the second and third confessions (which he had in chambers denied signing), and also admitted to making the incriminating statements contained in the confessions, but said he gave them because he was abused.
He testified:
A. Well, to say first of all that I was attacked by four police officers, four police officers, and I was not arrested in Rankin County. I was brought over here, and I was threatened, abused, physically, I went through a lot of pain, in other words, a lot. They brought me over here and they wrote out this statement. It's not my handwriting, so anybody could have, you know, I didn't write it. They wrote it out and they asked me to sign it. That's why I said under extreme pressure, I did sign it. But not any of the statements are true.
Vol. II, p. 270-271.
Powell said that Lt. Dickerson of the Jackson Police Department was one of the *368 officers who had mistreated him.[2] Powell furnished no identity of the other officers who he claimed had abused him, except to say a Hinds county officer, a Jackson city policeman, and the officer who brought him from Hinds County to Rankin County, in addition to Dickerson.
When the defense had rested, the state called as rebuttal witnesses Cavanaugh, Boxx, Dickerson, Dixon, McGee and an agreed stipulation as to Gounce. All these witnesses testified Powell had not been mistreated, showed no sign of mistreatment, and made no claim of having been mistreated in their presence.

LAW
The state failed to produce Atkinson, present during the interrogation which led to Powell's first confession, as a witness on the issue of voluntariness. Because of this failure, the circuit judge ruled the confessions inadmissible.
Did this ruling preclude the state's use of these confessions to impeach Powell's credibility as a witness?
We start with two basic rules enunciated by this Court and the United States Supreme Court. The first is that a confession which in truth and in fact was not voluntary, which came about as a result of threats, physical mistreatment, or the promise of reward to make it, cannot be used at all, either in the state's case-in-chief or for impeachment purposes. We stated in Ladner v. State, 231 Miss. 445, 450, 95 So.2d 468 (1957):
... The reasons for excluding as evidence an involuntary confession apply with equal force when the confession is offered for purposes of impeachment. The confession is just as prejudicial and just as incompetent when offered in the one as in the other. The fact that the defendant takes the stand in his own behalf does not make incompetent evidence admissible against him. In principle the State should not be permitted to make any use whatever of an involuntary confession... .
On the other hand, the United States Supreme Court and this Court have held that a confession which in truth and in fact was freely and voluntarily given, but which was inadmissible as evidence on the state's case-in-chief because of a technical violation of the superstructure safeguards imposed by Miranda v. Arizona, 384 U.S. 436, 467-473, 86 S.Ct. 1602, 1624-1627, 16 L.Ed.2d 694 (1966), could be used for impeachment purposes if the accused testified to the contrary.
In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the accused was given a defective Miranda warning, the officers inadvertently failing to tell him he was entitled to an attorney. There was no question, however, but that the confession was free and voluntary. The U.S. Supreme Court held the confession could be used for impeachment purposes.
In Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the accused was given a correct Miranda warning, and made a confession of guilt of theft of two bicycles, which was not in complete detail, however. He was placed under arrest, and as he was being transported to jail told the officer he would like to telephone a lawyer. The officer told him he could do so as soon as they got to the office. Then, as they passed an area the accused pointed out to the officer some brush where he had hidden a bicycle. The state trial court ruled the last statement inadmissible on the state's case-in-chief, but permitted introduction of the statement in rebuttal to contradict the defendant's trial testimony. The U.S. Supreme Court ruled this was proper.
In Booker v. State, 326 So.2d 791 (Miss. 1976), we adopted this rule where voluntariness in fact was not an issue, and also *369 reaffirmed Ladner, supra, as to an involuntary confession.
It is readily apparent this case cannot be precisely fit under either Ladner or Booker. We are called upon to apply either the Ladner or the Booker rule, however, to a case where the state failed to comply with a rule dealing with the admissibility of confessions enunciated by this Court prior to Miranda. This rule was set forth in Agee v. State, 185 So.2d 671, 673 (1966):
The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959). When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question of the admissibility of the confession. This hearing is conducted in the absence of the jury. Lee v. State, supra, is also authority for the proposition that when, after the State has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness. See also Holmes v. State, 211 Miss. 436, 51 So.2d 755 (1951).
The circuit judge properly ruled that the state's failure to produce Atkinson as witness rendered the confessions inadmissible under Agee. The state failed to offer an "adequate reason" for Atkinson's absence, Agee, supra; Kelly v. State, 414 So.2d 446 (Miss. 1982); Scott v. State, 382 So.2d 1091 (Miss. 1980); Miles v. State, 360 So.2d 1244 (Miss. 1978); and Hicks v. State, 355 So.2d 679 (Miss. 1978). With a motion to suppress on file, the state was put on notice that prudent trial preparation dictated having all officers present during Powell's interrogation be ready and available as witnesses at a competency hearing. This does not remove this Court's astonishment and dismay that Atkinson, a law enforcement officer, in a case of this magnitude and gravity, refused to return to Mississippi and testify, considering it more important to make a speech at a police officers' convention.
Further, Powell was not precluded from challenging the validity of the second and third confessions on the issue of voluntariness, even though he denied in chambers having signed them. See: Kelly v. State, supra; Murphy v. State, 336 So.2d 213 (Miss. 1976); and Lee v. State, 203 Miss. 264, 34 So.2d 736 (1948).
Having made these observations, it is also clear from the record that the state proved by the overwhelming weight of the evidence that the confessions in truth and in fact were freely and voluntarily given. Atkinson never questioned Powell, he was at most a spectator to the interrogation conducted by the Federal Bureau of Investigation agents. In this case we have officers from four separate and distinct agencies who were present during Powell's questioning for the three confessions: the Federal Bureau of Investigation, the Jackson Police Department, the Rankin County Sheriff's Office, and the Mississippi Highway Safety Department. All unanimously concurred that Powell had been given all Miranda warnings, that he was promised nothing, and no force or threats of any kind were used to get him to make a statement. Furthermore, he made no complaint to them of having been abused in any manner.
Powell's claim to the contrary was, at most, a generalized complaint, devoid of any specifics.
From this we must conclude that here we do not have a Ladner situation, no case of any official misconduct, but rather a technical failure of the state to put on one witness out of many to Powell's interrogation.
*370 Under these circumstances we find that this case is a much closer analogy to Harris, Hass and Booker than to Ladner.
The state failed to produce Atkinson; it paid the penalty in being unable to introduce the confessions into evidence. In a case, however, where the proof of voluntariness is overwhelming, with only a weak and tenuous contradiction, even though a confession has been ruled inadmissible  not because a serious factual issue has been raised that it is involuntary  but because there was something less than one hundred percent compliance with a court imposed rule, this should not tempt a defendant to think he can with impunity testify contrary to statements previously given.
A jury issue may still be made on whether the prior conflicting statements to police officers resulted from their wrongful conduct or were freely made. The defendant is simply prevented from testifying to facts before the jury without fear of contradiction.
No error was committed by the trial court in permitting cross-examination of Powell as to previous inconsistent statements and rebuttal testimony.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The court's ruling is as follows:

Based on Mr Craft's statement it is the opinion of the Court that it is encumbant [sic] on the State of Mississippi to put all of the law enforcement officers who were present at the taking of the first statement or the one which began at 8:30 on the evening of July the 8th, and concluded at 12:25 on July the 9th, one of which is Exhibit D-2 on the motion to suppress is not admissible. It is the further opinion of the court that the statement taken on July the 11th which is Exhibit D-3 and D-4 on the motion to suppress are likewise inadmissible because they fall in such close proximity to Exhibit D-2, and also because the defendant complained of coersion [sic]. Therefore, the motion to suppress Exhibits D-2, D-3, and D-4 is granted.
Vol. II, p. 255.
[2] It is not clear whether Powell meant Dixon, a Jackson police officer, or Dickerson, the chief deputy of Rankin County. He identified the "mistreating" officer as the "tall, slender man who testified." The jury may have understood who he was referring to, the record does not make it clear.