McRAE, Justice,
for the Court:
Frank Lettelier was tried in the Circuit Court of Lafayette County and found guilty of possession with intent to sell a controlled substance on July 17, 1990. Following his conviction, he was sentenced to serve twelve (12) years in the custody of the Mississippi Department of Corrections, with four (4) years suspended, and to pay a fine of $1,000.00 and the statutory crime lab fee. On appeal, Lettelier assigns seven errors. Finding that only one assignment has merit, we address the following:
THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE THE STATEMENT OF THE DEFENDANT MADE AT THE SCENE OF THE ARREST.
The admission of Lettelier’s confession into evidence violated the rule of Agee v. State, and on that basis, we reverse.
FACTS
Victor Estock, a police officer at the University of Mississippi testified that he re *758 ceived word “several months prior to April 15 [, 1989] ... that a male named Frank was selling ecstasy out of his dorm room at Barnard dormitory.” Estock further testified that on April 15, 1989, he received a call from a second source who had allegedly provided Estock with reliable information in the past. This second source allegedly informed Estock “that Mr. Lettelier was in possession of a large amount of ecstasy in his room, and he also stated that he had, just prior to calling me, left the room and seen the ecstasy in Mr. Lettelier’s possession.” The source described Lettelier, stated that Lettelier was a hall director for his floor, and informed Estock that Lettelier was at that moment working at the desk in Barnard dormitory. Estock testified that two officers went to Barnard Hall and observed Lettelier working at the desk in the lobby.
Estock then obtained a warrant to search Lettelier’s dormitory room from a justice court judge. Accompanied by David McGregor and Jeff Davis, members of the Lafayette County Metro Narcotics Unit, Estock proceeded to Lettelier’s dormitory room to execute the warrant. According to Estock, the door to Lettelier’s room was unlocked when the officers arrived and no one was inside. Estock also testified that shortly after the search began, Davis stepped out into the hall and observed Lettelier approaching the room.
At this point, the officers’ account diverges from that of Lettelier. Estock testified to the following: When Lettelier entered the room, he had his hands in his pants pockets and “was acting nervously.” He was immediately presented with the search warrant. Estock ordered Lettelier to empty his pockets, and Lettelier removed a roll of currency from his left pants pocket. When later counted, the roll of currency was found to contain $332.00. However, Lettelier refused to remove his right hand from his right pants pocket. Although his police report does not reflect it, Estock testified that he observed a bulge in the pocket. Thinking Lettelier might have a weapon, Estock ordered Lettelier to assume a search position on the wall. As Estock reached down toward the right pocket, “he [Lettelier] removed his hand from it and hit me across the chest and tried to fight his way out of the room, pulling a bottle of pills out of his pocket at the same time.” In the meantime, Officers Davis and McGregor had stepped out into the hall, so Estock called them back inside to help subdue Lettelier. Lettelier was arrested, and Estock read him his Miranda rights from a card Estock carried in his wallet. According to Estock, Lettelier then confessed
that he had gotten the ecstasy from a friend of his that reportedly had gotten them from Louisiana or somewhere, I believe. He also stated that he had been selling ecstasy to pay off a DUI fine, I believe some other fine that he had received at an earlier date.... [He also] stated that he originally had approximately one hundred hits of the ecstasy, and that he had sold down to the number that we arrived at on the final count.
The bottle confiscated from Lettelier contained approximately seventy-five pills. Estock testified that Officer Davis was present at the confession, but that he was not sure if McGregor was in the room at the time.
Officer Davis’ testimony generally corroborates Officer Estock’s account. He adds that Calvin Joy (“Joy”), an officer with the University Police Department, arrived at some point during the arrest process. He testified additionally that the $332.00 removed from Lettelier’s pocket was mostly in denominations of tens and twenties. According to Davis, “[e]cstasy sells for approximately twenty five, — twenty to twenty-five dollars a hit on the streets and therefore in twenty dollar bills which would be equivalent of buying denomination.” Davis did not recall seeing a bulge in Lettelier’s pocket when Lettelier entered the room.
Lettelier testified as follows: When he arrived at his dormitory room, he was handed a copy of the search warrant. He was then instructed to empty his pockets. He did so, producing the currency. After he removed the money from his pocket, the officers conducted a pat-down search but *759 found nothing. All the officers except Es-tock left the room to search the hall. Es-tock stood at the doorway, looking out. While the officers had their attention focused elsewhere, Lettelier glanced into an open drawer and observed a bottle of pills that he had never seen before. Thinking that someone may have planted drugs in his room, he “panicked” and put the bottle in his right pocket. Estock then reentered the room and ordered Lettelier to assume a spread-eagled position against the wall so that Estock might search him again. When Estock began to reach for Lettelier’s right pocket, Lettelier “panicked” again and tried to run away. After Lettelier jerked away from Estock, three other officers, one of whom was Davis, entered the room and helped subdue Lettelier. Lettelier admitted at a pretrial suppression hearing that “I had to be subdued.” When asked at trial if he had been read his Miranda rights, Lettelier stated: “No, they may have, but at the time, under the conditions I was under, I didn’t understand what was being read to me. I don’t know what is was.” The officers handcuffed Lettelier and, according to his account,
Officer Davis initiated questions, started questioning. I stated I didn’t know what I should do or who I should talk to, and at that time, he stated that he knew of several boys who had been arrested for drugs, and who stayed quiet, remained quiet because their fathers were hot shot lawyers, and that they could get them off; they thought they could get them off, so they stayed quiet, which I was doing, but if I would — at that time, they were at Parchman serving five to ten years, and if I stayed quiet like that then I would be in Parchman for fifteen years, and that they would guarantee that that would stick.
Lettelier admitted making the confession, but explained:
At that time, I was scared and didn’t know what to do. I was afraid. I didn’t know if I would be taken to Parchman that same day or not, or if I would be allowed any bail or how much bail I would be able to make. I just cooperated with whatever the officers wanted to hear, told them what they wanted to hear.
On cross-examination, the prosecution sought to discredit Lettelier’s professed fear that he would be “taken to Parchman that same day” unless he confessed. The State brought out that Lettelier was twenty-two years old at the time of arrest, that he had attended the United States Naval Academy for two years upon congressional recommendation, that he had high ACT and SAT scores, that he had watched television shows with law enforcement themes, and that he had been arrested previously on a DUI charge.
Officers McGregor and Joy did not testify. The prosecution explained that McGre-gor no longer lived or worked in Lafayette County and that Joy was “also unavailable.”
LAW
The State acknowledges that this case must be reversed on grounds that the Agee Rule was not satisfied in the proceedings below. In Agee v. State, 185 So.2d 671 (Miss.1966), this Court held that if a defendant testifies that
violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witnesses.
Agee, 185 So.2d at 673.
In Scott v. State, 382 So.2d 1091 (Miss.1980), this Court further held that the Agee requirement applies where a defendant “testifies to any fact which, if true, would tend to show that the confession was not voluntary.” Lettelier claims that he could not recall being read his Miranda rights, and he allegedly thought that he would be sent to Parchman “that same day” if he did not confess. Under Scott and Agee, therefore, the trial court should have required the prosecution to produce testimony from all officers present at the scene absent “an adequate reason for the absence of any such witnesses.” The record shows that in *760 addition to Officers Estock and Davis, both of whom testified, Officers McGregor and Joy may have been present at the time of the arrest and confession. The prosecutor merely told that court that McGregor no longer lived or worked in Lafayette County and that Joy was “also unavailable.” The “adequate reason for absence” exception to the Agee Rule requires more. See Powell v. State, 483 So.2d 363, 369 (Miss.1986) (officer attending police school in Louisville, Kentucky was not legally “unavailable” within meaning of Agee); Kelly v. State, 414 So.2d 446, 447-48 (Miss.1982) (officer on vacation in Texas not legally “unavailable”); Miles v. State, 360 So.2d 1244 (Miss.1978) (officer on vacation in Arkansas was not legally “unavailable”). We therefore hold that the trial court erred by admitting testimony concerning Lettelier’s confession.
The evidence of Lettelier’s intent to sell, as revealed in the record, is not so overwhelming as render harmless the trial court’s error. See Arizona v. Fulminante, 499 U.S. -, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302, 322 (1991) (admission into evidence of coerced confession is reversible error unless court is “able to declare a belief that it was harmless beyond a reasonable doubt”); United States v. Raymer, 876 F.2d 383 (5th Cir.1989) (reference to inadmissible confession can be harmless only in face of overwhelming evidence of guilt), cert. denied, 493 U.S. 870, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). Accordingly, Lettelier’s conviction and sentence must be reversed. On remand, the prosecution should be permitted to call McGregor and Joy as witnesses or, if the two are unavailable, to show a legally adequate reason for their absence.
REVERSED AND REMANDED FOR NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.