336 So.2d 213 (1976)
Lynn MURPHY
v.
STATE of Mississippi.
No. 49152.
Supreme Court of Mississippi.
August 3, 1976.
*214 Schissel & Harrigill, W.S. Stuckey, Jr., Greenwood, for appellant.
A.F. Summer, Atty. Gen. by Catherine Walker, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, SUGG and LEE, JJ.
SUGG, Justice, for the Court:
Defendant, David Tindall, and defendant's mother, Frances Murphy, were indicted by a grand jury in Leflore County for the murder of Kent Murphy, the father of defendant. Defendant was separately tried, convicted, and sentenced to life imprisonment.
Defendant assigns three errors but the principal question is whether a statement made to officers by the defendant after she requested consultation with a lawyer, but before she consulted the lawyer, was admissible for the purpose of impeaching defendant's credibility as a witness when her trial testimony contradicted her prior statement.
About 5:30 p.m. on August 18, 1974, Kent Murphy, the father of defendant, was shot and killed in his home by David Tindall. Tindall was the boyfriend of defendant and confessed the killing to authorities shortly after the homicide, but did not, at that time, implicate any other persons in the homicide. On the following day defendant went to the sheriff's office at the request of the sheriff for the purpose of giving a statement. At that time defendant was not a suspect in the homicide and was not given Miranda warnings.
When asked for a statement defendant told the sheriff and his deputy, Ricky Banks, that she did not want to make a statement without first consulting the attorney who later represented her at her trial. One of the officers tried to reach the attorney by telephone but was advised that the attorney was not available because he was in court. Questioning by the sheriff and deputy was resumed and in response thereto defendant gave an oral statement and a written statement.
Defendant also argues that her statements were the result of coercion. The trial judge ruled that her statements were not voluntary because they were solicited after she had requested an attorney. Neither the written statement nor the oral statement was inculpatory; however, the oral statement contradicted her trial testimony as set forth hereafter.
Defendant denied that she made an oral statement but this did not preclude her from maintaining that the statement was not made voluntarily. Lee v. State, 201 Miss. 423, 29 So.2d 211 (1947) cert. granted and case reversed, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1947), conformed 203 Miss. 264, 34 So.2d 736 (1948).
Defendant testified that she was in the backyard when she heard a shot fired. She entered the house and found her father lying on the floor wounded. On cross-examination she stated:
A. Well  the only thing I really remember about what he was doing  he was moving  he was moaning and all  and I remember right after the gun went off  Daddy went Oh, God. He hollered. When I went in the house, he was moving around and moaning and then I turned around  I couldn't stand it no more so I turned around and went in my mother's bedroom.
Q. Let me ask you, when you walked in the house from the back yard, and saw your father on the floor, had he been shot then?
A. Yes, sir.
Q. Was he in blood lying on the floor?
A. There was  there wasn't  at that time  I couldn't say that there was a lot of blood but there was blood.
Q. Was he moaning?
A. Yes, sir.
Q. Was he moving, trying to crawl?
A. No, sir. He wasn't trying to crawl.

*215 Q. He was moving?
A. He was sorta flinching sorta  he wasn't really trying to move or get up  he was just laying there. Every now and then, he would sorta jump.
Q. Lynn, did you go over to your father and try to help him?
A. No, sir.
Q. Why not?
A. Because I was scared and I didn't know what to do.
Q. When you couldn't stand seeing this any longer, what did you do then, Lynn?
A. I walked into my mother's bedroom.
Q. What did you find when you walked into your mother's bedroom?
A. David was standing at the foot of my mother's bed and I walked behind  he had the gun in his hand and I walked behind him and I stood beside him  just standing there and it seemed like he just froze or something. Then I  he turned around and was fixing to walk back into the kitchen and I was right behind him and I was looking around the corner and he brought the gun up and he shot him again.
Q. Did you see him shoot your daddy the second time?
A. Yes, sir.
Q. Did you try to stop him?
A. No, sir. Not that I remember.
Q. Lynn, I ask you this, is it not a fact, that when David Tindall walked into that kitchen the second time, with the gun  you told him to shoot him again, David and get him out of his misery?
A. No, I did not.
Q. You deny that?
A. I deny that. (R. 383-85).
Deputy Sheriff Ricky Banks testified on rebuttal as follows:
A. Deputy Hughes brought Lynn to our office around lunch time on the 19th of August, 1974. Lynn sat down and talked to the Sheriff and I about what happened the Sunday before the 19th. She said that  she went through the trouble that her and Sue and her father were having. They went out of his office  at the Colonial Mobile Homes and that Mr. Murphy had picked Sue up by the collar and threw her down and he had told them  she said he had told them if they were at home when he got there, he was going to kill them. So, she said they went back home and she said she was outside and Sue was outside playing and Mrs. Murphy was trying to crank the lawn mower and that is when she heard the first shot. She said she ran in the house and David was standing there with a gun in his hand  the rifle. Her father was down on the floor. He was down on the floor on his all fours. I knew Mr. Murphy. David was standing there holding the rifle and her father was hollering. She said that she couldn't stand to hear him hollering so she told David to shoot him again to get him out of his misery. (R. 451-52).
In her testimony defendant denied that she told David Tindall to shoot her father to get him out of his misery. This testimony was contradicted by the deputy sheriff.
The contradictory statement of defendant was made to the deputy sheriff under conditions similar to those made by the defendant in Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) in that the statements were made in both cases in response to questioning by officers after defendants requested an attorney. In Hass the defendant had been arrested when the contradictory statements were made, whereas in this case the defendant had not been arrested. The summary set forth in 43 L.Ed.2d at 570-71 of Hass follows:
After having been arrested by an Oregon police officer on suspicion of burglary, the defendant was given the warnings required by Miranda v. Arizona (1966) 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974. On the way to the police station the defendant expressed the wish to telephone his attorney; the officer replied *216 that the defendant could do so as soon as they arrived at the police station, whereupon the defendant furnished inculpatory information. At the trial in the Circuit Court, Klamath County, Oregon, defendant testified to his innocence, but the police officer, recalled by the prosecution in rebuttal, repeated the inculpatory information furnished him by defendant. At the request of the defense, the trial court advised the jury that this information may not be used by them as proof of defendant's guilt, but may be considered only as it bore to his credibility. The jury returned a verdict of guilty. The Oregon Court of Appeals, feeling itself bound by earlier Oregon Supreme Court decisions, reversed on the ground that the inculpatory statements made by defendant were improperly used to impeach this testimony. (13 Or. App. 368, 510 P.2d 852). The Supreme Court of Oregon affirmed (267 Or. 489, 517 P.2d 671), distinguishing Harris v. New York (1971) 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643, wherein the United States Supreme Court held that in the fact situation involved statements made by an accused to police under circumstances rendering the statements inadmissible to establish the prosecution's case in chief under Miranda v. Arizona are admissible for purposes of impeaching the accused's credibility as a witness.
On certiorari, the United States Supreme Court reversed the judgment of the Oregon Supreme Court. In an opinion by Blackmun, J., expressing the views of six members of the court, it was held that (1) the United States Supreme Court had jurisdiction to review the case, since the attempt of the Oregon Supreme Court to distinguish the Harris case revealed the federal basis of the latter court's decision; and (2) the inculpatory information furnished by defendant was admissible only for the purpose of impeaching defendant's testimony.
The United States Supreme Court also held that a state may not impose greater restrictions as a matter of federal constitutional law when the Supreme Court specifically refrains from imposing them. The opinion of the Court stated:
Hass suggests that `when state law is more restrictive against the prosecution than federal law,' this Court has no power `to compel a state to conform to federal law.' Brief for Respondent 1. This, apparently, is proffered as a reference to our expressions that a State is free as a matter of its own law to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards. See, e.g., Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967); Sibron v. New York, 392 U.S. 40, 60-61, 88 S.Ct. 1889, 1901-1902, 20 L.Ed.2d 917 (1968). See also State v. Kaluna, 55 Haw. 361, 368-369, 520 P.2d 51, 58-59 (1974). But, of course, a State may not impose such greater restrictions as a matter of federal constitutional law when this Court specifically refrains from imposing them. See Smayda v. United States, 352 F.2d 251, 253 (CA9 1965), cert. denied, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966); Aftanase v. Economy Baler Co., 343 F.2d 187, 193 (CA8 1965). (420 U.S. at 719, 95 S.Ct. at 1219, 43 L.Ed.2d at 575-76).
In the instant case the statement made to the deputy sheriff was not admissible by the state on its case in chief for the reason stated by the trial judge in his ruling. However, it was not the result of coercion, duress, threats or promises and was therefore admissible for the purpose of impeaching the credibility of the defendant as a witness.
Defendant further contends that it was the affirmative duty of the trial judge to explain to the jury that the testimony of the deputy sheriff was offered for impeachment purposes only. In Booker v. State, 326 So.2d 791 (Miss. 1976) we held that a defendant is entitled to an instruction that contradictory statements may not be used as proof of guilt but may be considered only in passing on his credibility as a witness. *217 Defendant did not request such an instruction and did not object to the testimony when it was tendered. In the absence of a request for the instruction, no error was committed by the trial court.
Defendant also assigns as error that the verdict of the jury was contrary to the overwhelming weight of the credible and believable evidence and evinced bias, passion and prejudice on the part of the jury. The theory of the state's case was that the defendant was an accessory before the fact to the crime of murder. She was indicted and punished as a principal as authorized by Mississippi Code Annotated section 97-1-3 (1972). We have carefully considered the entire record in this cause and find that the verdict of the jury was supported by credible evidence.
Defendant's third assignment of error is that the court erred when it refused to give the instructions on manslaughter requested by her.
The rule in this state is that it is never proper to grant a manslaughter charge unless there is some competent evidence tending to show that the killing was in the heat of passion and without malice. Jones v. State, 222 Miss. 387, 76 So.2d 201 (1954); Newell v. State, 209 Miss. 653, 48 So.2d 332 (1950). Such evidence is not present in this case, but, to the contrary, the whole record points to a case of murder.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.