358 So.2d 1324 (1978)
Prentiss SIMMONS, Jr.
v.
STATE of Mississippi.
No. 50506.
Supreme Court of Mississippi.
May 24, 1978.
Varner & Parker, J. Mack Varner, Vicksburg, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, LEE and BOWLING, JJ.
ROBERTSON, Presiding Justice, for the Court:
Prentiss Simmons, Jr. was indicted, tried and convicted in the Circuit Court of Warren County for armed robbery. He was sentenced to thirty-five years in the Mississippi State Penitentiary.
Simmons assigns as error:
I. The Court erred in allowing the State's rebuttal witness, Phil Solomon, to testify concerning alleged admissions made to him by the Appellant.
II. The Court erred in not instructing the Jury that the testimony of Phil Solomon, relative to alleged admissions made to him by the Appellant, were to be considered only in passing *1325 upon the Appellant's credibility and not as evidence of guilt.
About 1:30 p.m., December 3, 1976, two men, each armed with a pistol, entered Trudy's Dress Shop in Vicksburg, Mississippi, and robbed its proprietors, Joe and Gertrude Dahlhauser, of approximately $260 in cash. The Dahlhausers and two other employees of the dress shop, Viola Tippet and Willie Mae Brock, positively identified Prentiss Simmons, Jr. as being one of the robbers.
Mrs. Dahlhauser testified that Simmons grabbed her from behind and put a pistol to the side of her head. When Mr. Dahlhauser approached from the rear of the store he was intercepted by Simmons and ordered to lie on the floor. Simmons took Mr. Dahlhauser's wallet from his pocket and removed approximately $200 from it, including a $100 bill and a $50 bill.
James Magee, who operated a laundromat next door, saw two men run out of the shop and turn into an alley. Magee went in pursuit and saw them go into the back of a house on nearby Green Street. Magee returned to the dress shop and informed the police where the two robbers had gone. Magee then got into his truck and went to Green Street and there observed Simmons getting into a taxicab. He informed a uniformed police officer, and that information was put out over police radio.
After receiving that information over the radio, Chief of Police Avery J. Holliday of the Vicksburg Police Department stopped the cab at the corner of Monroe and South Streets, and after finding a .22 caliber automatic pistol under the edge of the rear seat where Simmons was sitting, Holliday placed Simmons under arrest and advised him of his Miranda rights. Upon searching him, Holliday removed $126 cash, including a $50 bill.
After the State had rested, Defendant Simmons took the witness stand in his own defense. On cross-examination, Simmons testified unequivocally that he had made no statement to Lt. Phil Solomon of the Vicksburg Police Department.
Both defendant Simmons and Lt. Solomon then testified at an evidentiary hearing outside the presence of the jury. Simmons testified that the arresting officer advised him of his rights, including the right to an attorney, but that Lt. Solomon did not. Simmons stated that although he asked for an attorney before talking to Lt. Solomon an attorney was not furnished him. Still outside the presence of the jury, Simmons further stated that Lt. Solomon told him:
"`I'll help you if you tell me that you did it, and didn't McKinley Bell help you do this?' And I told him I didn't have anything else to say because I didn't do anything, and I don't know what you are talking about... ."
On cross-examination, still outside the presence of the jury, Simmons again denied making any statement to Lt. Solomon, in these words:
"I did not make the statement, period."
The Court overruled defendant's objection to the proffered testimony of Lt. Solomon.
Lt. Solomon then testified in rebuttal that Simmons freely and voluntarily admitted to him that he and McKinley Bell robbed Trudy's Dress Shop, that they went to McKinley Bell's house and divided the money, and that he, Simmons, then left in a taxicab. On cross-examination, Lt. Solomon again stated that he made no promises nor did he offer any help to Simmons if he confessed, and that Simmons' statement was freely and voluntarily made.
The defense rested without putting Simmons on the witness stand to reiterate his testimony at the evidentiary hearing.
The proper predicate having been laid in the cross-examination of Simmons, no error was committed when Lt. Solomon was called as a rebuttal witness to impeach the credibility of Simmons.
At the evidentiary hearing, only a general objection was made to the proffered testimony of Lt. Solomon.
In Lay v. State, 310 So.2d 908 (Miss. 1975), this Court said:

*1326 "It is well settled that objections to evidence must be specific as to the grounds thereof, otherwise, the objection is waived. We held in Boring v. State, 253 So.2d 251 (Miss. 1971) that:
Objections to evidence must bring to the attention of the trial judge the specific ground on which it is contended such evidence is inadmissible so that the trial judge may determine whether or not such evidence is available to objector's adversary.
The rule requiring specific objections is necessary because to permit litigants to hold back objections until on appeal would mean that costly new trials would be had where valid objections could have been sustained during the trial. Roberds v. State, 187 So. 755 (Miss. 1939); Kimbrall v. State, 178 Miss. 701, 174 So. 47 (1937); Dobbs v. State, 167 Miss. 609, 142 So. 500 (1932); Williams v. State, 171 Miss. 324, 157 So. 717 (1934). This rule has been recognized by the Federal Court in this jurisdiction. Gann v. Smith, D.C., 318 F. Supp. 409 (1970). 253 So.2d at 253). 310 So.2d at 912.
See also, Norman v. State, 302 So.2d 254 (Miss. 1974); Stringer v. State, 279 So.2d 156 (Miss. 1973).
There is no merit in the first assignment of error.
The defendant next contends that the court should have instructed the jury that Lt. Solomon's testimony in rebuttal was to be considered only in passing upon his credibility and not as evidence of his guilt. The defendant did not ask for such an instruction, but argues that the court on its own should have so instructed the jury.
This Court answered this contention in Murphy v. State, 336 So.2d 213 (Miss. 1976):
"Defendant further contends that it was the affirmative duty of the trial judge to explain to the jury that the testimony of the deputy sheriff was offered for impeachment purposes only. In Booker v. State, 326 So.2d 791 (Miss. 1976) we held that a defendant is entitled to an instruction that contradictory statements may not be used as proof of guilt but may be considered only in passing on his credibility as a witness. Defendant did not request such an instruction and did not object to the testimony when it was tendered. In the absence of a request for the instruction, no error was committed by the trial court." 336 So.2d at 216-17. (Emphasis added).
There is no merit in the second assignment of error.
The conviction and sentence are, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.