605 So.2d 767 (1992)
Willie Charles TOWNSEND and Josephine Kanoa Townsend
v.
STATE of Mississippi.
No. 89-KA-0342.
Supreme Court of Mississippi.
August 5, 1992.
Pat Donald, Morton, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
ROY NOBLE LEE, Chief Justice, for the court:
Willie Charles Townsend and Josephine Kanoa Townsend, husband and wife, were jointly indicted, tried and convicted in the Circuit Court of Scott County, Mississippi, for burglary and they were each sentenced to seven (7) years in the custody of the Mississippi Department of Corrections. Willie Charles Townsend was adjudicated an habitual offender and his sentence was without possibility of parole. The Townsends have appealed to this Court and assign seven (7) issues for discussion.

FACTS
On August 19, 1988, Willie Charles Townsend and Josephine Kanoa Townsend were living in Forest at Chico's Motel. Josephine worked at the Dairy Queen restaurant and Willie worked catching chickens at the McCarty State Pride processing plant. The State's principal witness, Ray Patrick, *768 testified that he and both of the defendants were together beginning at about 8:30 p.m. on the day of the burglary. They rode around for two or three hours drinking gin and beer before returning to the Townsend's motel room at about 11:30 p.m. Patrick stated that, while at the motel, the conversation between Willie and Josephine turned to breaking into the Dairy Queen where she worked by using a key that she had. Patrick testified that Willie had a pistol, which Patrick believed to be a .32 caliber. The Townsends did not have a car, but Patrick agreed to drive them to the Dairy Queen.
According to Patrick, he drove his car to the back of the Dairy Queen and parked. Both Willie and Josephine got out of the car, Willie stuck the pistol into his waist and both put socks over their hands. Willie also carried a lug wrench as the two gained entry to the restaurant using Josephine's key. Patrick waited for about twenty (20) minutes behind the restaurant before the two emerged with some "money sacks." Patrick drove them back to the motel, where Willie cut the bank bags open with a knife.
The Townsends packed all of their belongings and subsequently traveled to Jackson and the Trailways bus station. Once there, Willie bought two one-way tickets to San Francisco. As Patrick left to return to Forest, Willie threw some money on the car seat, which Patrick later counted and determined to be $201.
Charles Boyd worked as assistant manager of the Dairy Queen in August of 1988. He testified that, as far as he knew, there were seven (7) keys to the Dairy Queen at that time which were possessed by the owner, the three managers and three shift leaders. He knew that Josephine had a key at the time and had been trying to get it from her, but she always had an excuse not to give it back. On August 19, 1988, he placed the money and some meal tickets used by the employees into some Bank of Forest money bags and then placed the money bags into a filing cabinet. He was the last person to leave the restaurant at about 11:00 p.m. that night after locking the doors. When he returned to open the restaurant the following morning, he noticed that the filing cabinet had been broken into. Further investigation on his part also revealed that one of the cash registers had been opened and that all of the bills had been taken from it. A receipt still in the register indicated that it had been opened on the morning of August 20, 1988, at 1:33 a.m. by someone using the access code of an employee named Stacey, whose last name he could not remember, but who still worked at the restaurant at the time of trial. Boyd testified that a little over $5,000 was missing from the filing cabinet and cash register. Boyd also testified that Josephine knew Stacey's access code.
According to David White, an officer at the Shreveport, Louisiana Regional Airport, he observed the Townsends buying tickets at the Delta Airlines counter on the morning of August 20, 1988, and he became suspicious when they purchased their tickets with cash. White received a request to come to the metal detectors, where the operator had detected bullets in the Townsend's carry-on luggage. Upon being questioned, Willie stated he just forgot to take them out of the bag. The Townsends complied with the request of Officer White that they accompany him to the police office inside the airport for the purpose of filling out an FAA report for an attempt to carry explosive devices onto an aircraft. The Townsends gave Officer White permission to search their bags and to empty their pockets and he found rolls of coins, insurance forms in other names, cash and one way bus tickets to San Francisco as well as a box of .38 caliber shells. Willie also showed the officers cash in his pockets which amounted to about $300.00. The Townsends were not arrested and were released to board their plane.
The Chief of Police in Forest was contacted and arrest warrants were issued by the Municipal Judge. In the meantime, the Townsends were enroute to the Dallas-Fort Worth Airport from the Shreveport Airport. During the flight, the arrest warrants were forwarded to the Dallas Police Department and the officers met the Townsends' plane and arrested them when it *769 landed. Officer John Gamble conducted a search which disclosed $838.54 in cash. He also found airline tickets to San Francisco in the names of Charles and Josephine Townsend. Josephine's traveling bag contained $401.06. Subsequently, the search of her person revealed $1,868.38.
Willie Charles Townsend was the only witness called for the defense. According to him, on the night of August 19, 1991, he and Josephine were preparing to go to Palo Alto, California, where her mother was sick and needed medical attention. He admitted that he had been with Ray Patrick that night beginning at approximately 9:00 p.m. and that they rode around drinking and talking before picking up Josephine at the Dairy Queen when she got off work at about midnight. He denied that the Townsends broke into the Dairy Queen and stated that he and Josephine had $4,600.00 to $4,700.00, which consisted of their life savings and donations from his family. The money was for medical treatment needed by Josephine's mother in California.

ISSUES
We have carefully examined the record and briefs with reference to the following issues:
I. DID THE TRIAL COURT ERR BY REFUSING TO GRANT A MISTRIAL WHEN APPELLANT WILLIE CHARLES TOWNSEND WAS BROUGHT BEFORE THE ENTIRE VENIRE IN CHAINS PRIOR TO VOIR DIRE?
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A MISTRIAL WHEN THE STATE INTRODUCED ALLEGATIONS OF OTHER CRIMINAL ACTIVITY ON THE PART OF APPELLANT WILLIE CHARLES TOWNSEND?
III. DID THE TRIAL COURT ERR IN FINDING THAT THE ARREST OF THE APPELLANTS AT THE DALLAS FORT-WORTH AIRPORT WAS BASED ON A VALID ARREST WARRANT, AND THAT THEREFORE EVIDENCE SEIZED AT THE TIME OF THE ARREST WAS ADMISSIBLE IN EVIDENCE?
IV. DID THE TRIAL COURT ERR IN ALLOWING TESTIMONY OF OFFICERS FROM SHREVEPORT, LOUISIANA CONCERNING THE DETENTION OF THE APPELLANTS THERE AND THE OBSERVATIONS MADE DURING THAT DETENTION?
V. DID THE COURT ERR IN REFUSING TO GRANT A MISTRIAL BASED ON THE COMMENT OF ONE OF THE OFFICERS CONCERNING THE APPELLANTS ASSERTION OF THEIR RIGHT TO WITHHOLD CONSENT TO A SEARCH?
VII. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE MOTION FOR SEVERANCE OF THE TRIAL OF THE TWO DEFENDANTS?
We are of the opinion that there is no merit in those issues and, therefore, they are rejected.
We address the following issue:

VI. DID THE LOWER COURT ERR IN ALLOWING THE STATE TO IMPEACH THE TESTIMONY OF WILLIE CHARLES TOWNSEND WITH TWO PRIOR BURGLARY CONVICTIONS?
Before trial, the lower court heard arguments on the motion in limine to exclude impeachment by use of Willie's prior two burglary convictions. The defense argued that the use of such convictions would result in prejudice far outweighing the probative value, while the prosecution argued that the convictions were admissible without a balancing analysis, since they were independently admissible under M.R.E. 609(a)(2) as crimes involving dishonesty or false statement. The lower court held that the convictions would be admissible, stating that
... I think this is the kind of case if presented, the credibility of this individual will be a prime element in the jury's decision, and to withhold the fact he was convicted of two crimes involving veracity, which in my thinking burglary does, would be to withhold from them rules they need to make such a determination... .
*770 The court also stated that, "I think the need for this evidence outweighs substantially the prejudice that would result... ."
Whether burglary is a crime involving dishonesty or false statement within the meaning of M.R.E. 609(a)(2) has never been considered by this Court. The comments to Rule 609 state that those are crimes "such as perjury or subordination of perjury, false statement, fraud, embezzlement, false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."
This court has only considered whether three specific crimes fit within the parameters of M.R.E. 609(a)(2). In McInnis v. State, 527 So.2d 84 (Miss. 1988), the Court noted that the State conceded that the crime at issue, arson, was not a crime involving dishonesty or false statement. However, the Court noted that this concession might have been premature, since in some instances, such as insurance fraud, arson might indeed involve dishonesty or false statement. Id. at 88, n. 1.
In Johnson v. State, 529 So.2d 577 (Miss. 1988), this Court held that convictions of the manufacture, possession or transportation of untaxed liquor were within the crimes of dishonesty or false statement contemplated by M.R.E. 609(a)(2). The Court quoted, "a crime which involves defrauding the revenue stands high in the category of crimes affecting veracity." Id. at 587 (quoting United States v. Apuzzo,, 555 F.2d 306, 307-08 (2nd Cir.1977), cert. denied, 435 U.S. 916, 98 S.Ct. 1470, 55 L.Ed.2d 507 (1978)). Finally, in Turner v. State, 573 So.2d 1335 (Miss. 1990), it was held that a conviction of forgery under Miss. Code Ann. § 97-19-39 was admissible under Rule 609(a)(2).
On the precise question of whether theft crimes fit within M.R.E. 609(a)(2), one authority has noted that while the majority of federal courts considering the question have found that such crimes do not fit within the meaning of crimes of dishonesty or false statement contemplated by the rule, the state courts have split about evenly on the issue. Joseph & Saltzburg, Evidence in America, Ch. 43, p. 14 (1987). The Fifth Circuit Court of Appeals has strictly construed the Rule to crimes of the type listed in the comment to our Rule. It has held, for example, that shoplifting is not the type of crime in the nature of crimen falsi covered by the Rule. United States v. Ashley, 569 F.2d 975 (5th Cir.1978), rh'g. denied, 573 F.2d 85, cert. denied, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159. We hold, in accordance with the majority of federal courts, that a burglary conviction is not ordinarily admissible under M.R.E. 609(a)(2) and that convictions under that rule should be limited to crimes in the nature of crimen falsi. Accordingly, the trial court should not have allowed Willie's conviction under that rule.
Although the lower court made a finding under M.R.E. 609(a)(1) that it believed the probative value of the evidence outweighed the prejudicial effect, the court did not comply with the requirement that it perform an on the record weighing of five factors:
(1) The impeachment value of the prior crimes;
(2) the point in time of conviction and the witness' subsequent history;
(3) The similarity between the past crime and the charged crime;
(4) The importance of the defendant's testimony; and
(5) The centrality of the credibility issue.
Pugh v. State, 584 So.2d 781, 785 (citing McGee v. State, 569 So.2d 1191, 1195 (Miss. 1990)). Accord, McInnis v. State, 527 So.2d 84 (Miss. 1988); Johnson v. State, 525 So.2d 809 (Miss. 1988); Peterson v. State, 518 So.2d 632 (Miss. 1987).
We are of the opinion that the impeachment should not have been allowed. First, as stated, burglary is not necessarily a crime affecting veracity. Second, the prior convictions were seven years old, lessening their probative value. Third, the crimes were identical, burglary. When allowable, convictions of prior crimes are to be considered only on the issue of credibility, not to show "a propensity on the part of *771 the defendant to have acted on the present occasion in conformity with the criminal character suggested by the previous conviction." McGee, 569 So.2d at 1195 (quoted in Pugh, 584 So.2d at 785). Fourth, the defendant's testimony was crucial to the defense, since he was the only defense witness. Fifth, credibility was central, but as in Jordan v. State, 592 So.2d 522 (Miss. 1991), the low probative value of the convictions on the issue of credibility does not raise the need for the evidence.
We are of the opinion that the above considerations weigh favorably for exclusion and the lower court committed reversible error in admitting the conviction into evidence.[1]
The judgment of the lower court is reversed and the case is remanded for a new trial. On the next trial, the lower court should weigh the factors in considering the admissibility of the prior conviction, keeping in mind that the strong case of the State probably would result in a conviction, regardless of its admission into evidence.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
PITTMAN, J., dissents with separate written opinion joined by HAWKINS, P.J. and McRAE, J.
PITTMAN, Justice, dissenting:
I cannot concur in holding that a prior conviction of burglary has no bearing on a witness' veracity. As noted by the majority, there is a split among the states as to whether prior convictions of theft crimes should be admissible to impeach the credibility of a witness. See 3 Weinstein & Berger, Weinstein's Evidence ¶ 609[04], at 609-46 to -49 (1991); 2 Joseph & Saltzburg, Evidence in America ch. 43, at 13-14 (1987). I am of the opinion that this Court should align itself with those other state courts which hold such evidence admissible for impeachment purposes.
In holding that a prior conviction for petty theft could be used for impeachment purposes, the Supreme Court of Florida stated:
We realize that our interpretation of the statute differs from the federal construction of identical language contained in federal rule 609... . But we are convinced that our interpretation is the more logical one, and we are not alone. The Illinois Supreme Court, in construing federal rule 609, which it had expressly adopted, stated:
There is little doubt but that theft reflects adversely on one's honesty and therefore relates to one's ability to be truthful under oath... .
... [A]ny misdemeanor, which has as its basis lying, cheating, deceiving, or stealing, bears a reasonable relation to testimonial deceit and should be admissible for impeachment purposes.

People v. Spates, 77 Ill.2d 193, 204, 32 Ill.Dec. 333 [339], 395 N.E.2d 563, 569 (1979).
... To restrict the rule's application only to those offenses which evidence an element of affirmative misstatement or misrepresentation of fact would be to ignore the plain meaning of the word "dishonesty." In Spates the Supreme Court of Illinois pointed out that Webster's Third New International Dictionary 650 (1971) defines "dishonesty" as a "breach of honesty or trust, as lying, deceiving, cheating, stealing, or defrauding ..." Id. at 203, 32 Ill.Dec. at 338, 395 N.E.2d at 568 (emphasis supplied).
State v. Page, 449 So.2d 813, 815-16 (Fla. 1984). See also State v. Grover, 518 A.2d 1039 (Me. 1986) (theft); Jaramillo v. Fisher Controls Co., Inc., 102 N.M. 614, 698 P.2d 887 (N.M.Ct.App. 1985) (shoplifting); Webster v. State, 284 Ark. 206, 680 S.W.2d 906 *772 (1984) (grand larceny); Richardson v. State, 579 P.2d 1372 (Alaska 1978) (petty larceny).
"Acts of stealing are generally regarded as conduct which reflects adversely on honesty and integrity." Grover, 518 A.2d at 1041. A man who will steal is likely to lie. Only the legal intelligentsia disagree. I would affirm the judgment of the lower court.
HAWKINS, P.J., and McRAE, J., join this opinion.
NOTES
[1] Some members of the Court are of the view that the lower court erred but that the error was harmless under the overwhelming evidence of guilt. However, lower courts and prosecuting attorneys must not commit errors on the speculation that the Supreme Court will affirm on the ground of harmless error. Cases must be tried and evidence must be admitted according to law.