624 So.2d 1313 (1993)
Willie James BOGARD
v.
STATE of Mississippi.
No. 90-KA-1262.
Supreme Court of Mississippi.
September 16, 1993.
*1315 David L. Minyard, Hill White & Minyard, Oxford, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PITTMAN, Justice, for the Court:
Willie James Bogard appeals from his multiple convictions of burglary of an inhabited dwelling while armed with a deadly weapon (Count I), two counts of aggravated assault (Counts II and III), and recidivism as defined by Miss. Code Ann. § 99-19-83 (Supp. 1992), following trial by jury in the Circuit Court of Lafayette County. Bogard was sentenced, as an habitual offender, to three (3) consecutive life sentences, each without the benefit of probation or parole.
Bogard raises nine (9) separate issues on appeal, five (5) of which merit discussion. We affirm Bogard's convictions and sentences, save for his conviction of burglary of an inhabited dwelling, which we reverse for insufficient proof of habitation. However, the evidence is sufficient to sustain a conviction for the lesser included offense of burglary of an unoccupied dwelling and we affirm as to Bogard's guilt of that offense and remand for resentencing under Miss. Code Ann. § 97-17-19 and § 99-19-83.

FACTS
Willie James Bogard and Sandra Dean were former paramours. Their year-long relationship had been occasioned by violence and threats of violence. Sandra Dean attributed much of the problem to Bogard's lifelong drinking habits.
During the evening hours of November 30, 1989, Sandra and her eighteen (18) year old son, Lamont Dean, returned to their home at 2306 Robinson Road in Oxford, Mississippi, following a visit to Sandra's mother. They entered the house cautiously because Bogard, Sandra's now-former boyfriend, had confronted them inside on previous occasions. Sandra was carrying a pistol in her hand because Bogard had a habit of following her wherever she went. She even slept with the gun because Bogard had previously threatened to take her life. After entering the house, she laid the pistol on the bed and went into the kitchen.
Lamont began an inspection of the house to see if Bogard was lurking anywhere inside. While searching the bedroom, he picked up the .38 revolver which his mother had purchased for her protection. When Lamont looked behind the living room couch, Bogard suddenly emerged and shot Lamont in the neck with a small chrome-plated pistol.
As Lamont was falling back to the floor, he began shooting in Bogard's direction. Although he testified he did not remember shooting, Lamont fired all six (6) of his shots while Bogard, according to Sandra, continued to shoot at Lamont. Sandra, who heard the shooting from the kitchen but did not see the entire incident, instructed Lamont to run, which he did with as much speed as his wound would allow.
After Lamont ran out of the house to a neighbor's home, Sandra became the target of Bogard's wrath. When she tried to escape, Bogard pushed her onto the floor and shot her in the head. After entering the kitchen for a brief moment, Bogard returned and shot Sandra in the face. Following the shooting, Bogard fled. He was arrested three (3) weeks later in Flint, Michigan, and extradited to Mississippi where he was charged as an habitual offender with two *1316 counts of aggravated assault and one count of burglary of an inhabited dwelling at night while armed with a deadly weapon.
During her treatment in the hospital emergency room, Sandra learned she was four and one-half months pregnant with Bogard's child. On May 24, 1990, several weeks after the delivery of Bogard's daughter, Sandra Dean and Willie James Bogard were married in the City of Oxford, Lafayette County, Mississippi.
Bogard testified in his own behalf, admitting he shot both Lamont and Sandra. He testified the shooting of Sandra was unintentional and claimed he shot Lamont in self-defense.

ISSUES

1. Bogard's Prior Conviction for Armed Robbery
Bogard contends the trial judge erred in permitting the prosecution to impeach his credibility as a witness in his own behalf by questioning him during cross-examination about his 1977 conviction for armed robbery. That particular cross-examination is quoted as follows:
Q. Mr. Bogard, you ever been convicted of armed robbery?
A. Yes, sir, I have.
Q. In this court?
A. Yes, sir, and I was sentenced by the Honorable Judge Lamb.
"When a criminal defendant elects to take the witness stand in his own defense he is subject to being impeached under Rule 609, M.R.E., with evidence of prior convictions." Hawkins v. State, 538 So.2d 1204, 1206 (Miss. 1989). The trial court found the conviction for armed robbery was probative with respect to the issue of credibility and that it had impeachment value. We hold the court did not abuse its judicial discretion in allowing the prosecution to bring out the mere fact of conviction for the purpose of impeaching the defendant's credibility as a witness in his own behalf. Hawkins v. State, supra.
Impeachment by evidence of conviction of crime is governed by Miss.R.Evid. 609(a) which reads as follows:
(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.
The prosecution made a prima facie showing that the conduct giving rise to the prior conviction was such that it reasonably bore upon the defendant's propensity for truthfulness. Saucier v. State, 562 So.2d 1238, 1245 (Miss. 1990). The judge then made an on-the-record finding that the probative value of the armed robbery conviction outweighed its prejudicial effect. Tillman v. State, 606 So.2d 1103 (Miss. 1992); Jordan v. State, 592 So.2d 522 (Miss. 1991); Pugh v. State, 584 So.2d 781 (Miss. 1991); McGee v. State, 569 So.2d 1191 (Miss. 1990); Saucier v. State, supra, 562 So.2d 1238 (Miss. 1990); Johnson v. State, 525 So.2d 809 (Miss. 1988); McInnis v. State, 527 So.2d 84 (Miss. 1988); Peterson v. State, 518 So.2d 632 (Miss. 1987). This satisfied the requirements found in Rule 609(a)(1).[1]
During the hearing to determine admissibility of the 1977 conviction, the State introduced a certified copy of the indictment, judgment, and commitment order relative to the armed robbery. Both the indictment and commitment paper reflect that Bogard exhibited a rifle and did take, steal, and carry away from the person of the victim a watch valued at $100.00 and $3.00 in cash. [emphasis supplied]
Prior convictions are not admissible under Rule 609 for any purpose other than attacking the credibility of a witness, including *1317 the defendant. McInnis v. State, supra. The legitimate purpose of impeachment is to demonstrate to the fact-finder background facts which reasonably bear on whether jurors ought to believe the witness/defendant rather than conflicting witnesses. The prosecutor was well aware of this fact, stating to the trial judge "that when we're talking about impeachment, we're talking about going to the veracity of his testimony and not attacking his character."
"In common human experience acts of deceit, fraud, cheating, or stealing ... are universally regarded as conduct which reflects adversely on a man's honesty and integrity." Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir.1967) [emphasis added]. The crimes of robbery and larceny, even if not in the nature of crimen falsi,[2] do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness to do so. Put another way, crimes which involve theft have at least some probative value for assessing credibility of the witness.
In the case at bar, the State successfully demonstrated to the lower court that the prior armed robbery conviction involved the stealing of another's money and personal property and had some intrinsic probative value regarding Bogard's propensity for truthfulness while under oath. See Turner v. State, 573 So.2d 1335, 1339 (Miss. 1990) (Conviction of grand larceny would have been available for impeachment of witness' credibility had witness testified at trial); Hawkins v. State, supra, where we held the trial judge did not abuse his judicial discretion in finding that a defendant's previous conviction of armed robbery "goes to the credibility issue, thus it has impeachment value." The State met its threshold burden by successfully making a prima facie showing of probative value.
We reject Bogard's contention that the trial judge failed to make an on-the-record determination that the probative value of the prior conviction outweighed any prejudicial effect. The trial court did engage in such an analysis utilizing the five (5) factors identified in Peterson v. State, supra, 518 So.2d 632, 636 (Miss. 1987). The court judiciously concluded that evidence of Bogard's prior conviction of aggravated assault would not be permitted while evidence of his prior conviction for armed robbery would be allowed. In weighing probative value against prejudicial effect, the trial judge specifically considered the fact the jury had already been made aware of Bogard's previous incarceration by way of Bogard's introduction into evidence of a certain tape recording which was played for the benefit of the jury. The trial judge also stated that a cautionary or limiting instruction would be given, which was done.
All of the Peterson factors favor the State save for the fourth factor involving the importance of the defendant's testimony. This factor was correctly resolved in Bogard's favor because he was his only witness. In this case, which is not unlike the case of Hawkins v. State, supra, the trial judge meticulously weighed the various factors and held that if Bogard took the witness stand, evidence of his armed robbery conviction would be admissible.

2. Bogard's Post-Matrimonial Letter to Sandra Dean
Bogard claims the trial court erred in allowing the prosecution to read into evidence the content of a handwritten letter from Bogard to Sandra Dean. This occurred during the State's cross-examination of Bogard after he had identified the letter and authenticated its contents. Bogard argues that the letter was both irrelevant and privileged. Neither argument is persuasive.
Bogard shot Sandra on November 30, 1989. He married her on May 24, 1990. In the wake of his marriage to Sandra, he wrote her a letter penned in the language of a fairy tale. The letter appeared to be a thinly *1318 veiled account of his assault on both Sandra and Lamont. Bogard testified he "took three episodes in our life and made a fairy tale for her ..."
In this letter, the setting is a land called "Diablo." Bogard is portrayed as Sir James, The Black Knight. Sandra is a Queen, and Lamont is a Prince. Portions of the letter read as follows:
"That night when the Queen was alone in her chambers Sir James barged in unannounced. Queen Sandra was frighten [sic] by his appearance. She tried to cry out, but the Mad Man was upon her.
With his hands around her throat, Queen Sandra knew that the Man she loved was about to kill her. Suddenly Sir James was know [sic] longer there. [T]hinking her mind was blacking out from lack of oxigen [sic], Queen Sandra was startled to find her Son struggleing [sic] with Sir James.
With strenth [sic] born of despiration [sic] and love for her son she joined in the struggle to overcome the crazed knight. Suddenly a strange object was produced by James. [T]he Queen told her son to run, then she felt two very hard blows to her head[,] then she felt herself slip into total darkness.
* * * * * *
Queen Sandra was surprised by many things but her biggest suprise [sic] came when her doctor told her she was with child, her heart was flooded with many emotions. Why would the man who claimed to love her so much hurt her so badly?"
The letter, written in Bogard's own hand, was certainly relevant to the issue of guilt or innocence since a reasonable, hypothetical juror could have readily found it related to the crimes for which Bogard was then on trial. Statements made in the letter, although written within the context of a fairy tale, constituted admissions by Bogard which could have been introduced during the State's case-in-chief. "An admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with other facts, to prove his guilt." Reed v. State, 229 Miss. 440, 91 So.2d 269 (1956). See also Mack v. State, 481 So.2d 793, 795 (Miss. 1985), citing Reed v. State, supra.
Finally, the letter did not constitute a privileged communication between husband and wife because no privilege exists where, as here, one is charged with a crime against the person or the property of the other spouse or a child of either of them. See Rule 504(d), Miss.R.Evid. The fact that Bogard was not married to Sandra when he shot her is inconsequential.
During redirect examination, Bogard was given an unlimited opportunity to explain the letter for the benefit of the jury, and he did so at great length. We hold no error ensued when the prosecutor read into evidence the content of Bogard's letter to Sandra.

3. Use of Bogard's Statement for Impeachment Purposes
The defendant testified on his own behalf. During cross-examination, the State sought to impeach Bogard's credibility as a witness with a prior inconsistent statement given to Oxford Police Lieutenant Andy Waller in Flint, Michigan, seven (7) months earlier. Bogard objected at the trial court and complains on appeal that the statement could not be used for any purpose because it was taken in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Bogard seeks to benefit from the rule that a statement or confession "which in truth and in fact was not voluntary, which came about as a result of threats, physical mistreatment, or the promise of reward to make it, cannot be used at all, either in the state's case-in-chief or for impeachment purposes." Powell v. State, 483 So.2d 363, 368 (Miss. 1986).
On direct examination, Bogard testified that Sandra Dean gave him a key to her house and instructed him to let himself in and wait for her because they needed to talk. He further testified he entered and waited.
On cross-examination, Bogard was asked if he had ever told anyone else a different story about how he had gotten into the house. He replied, "Yes, I have." After the judge overruled *1319 Bogard's objection to any further questions concerning this matter, Bogard testified that on December 19, 1989, he told Detective Waller that he, Sandra, and Lamont had entered the house as a group, that Sandra had opened the door and they then entered the house together. In response to further inquiries by the prosecution, Bogard admitted that the statement made to Detective Waller was not true. He acknowledged that the correct version of his entry into Sandra's house was embodied in his trial testimony given on direct examination.
It is well settled that otherwise voluntary statements, even when taken in violation of a defendant's Fifth or Sixth Amendment rights, may be used to impeach the defendant if he elects to take the witness stand. Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). See also Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). In other words, if the only objection to use of the statement or confession, or portions thereof, is that it was a product of a defective Miranda warning or no warnings at all, the State may use it to impeach the defendant's trial testimony without first establishing that the statement or confession was freely and voluntarily given. Booker v. State, 326 So.2d 791, 793 (Miss. 1976). See also Murphy v. State, 336 So.2d 213, 216 (Miss. 1976) and Day v. State, 382 So.2d 1071 (Miss. 1980).
Here Bogard's objection went to the denial of his Fifth and Sixth Amendment rights when Waller allegedly continued to question him after he had "plead[ed] the Fifth" and/or requested counsel.
No hearing on the voluntariness of the statement made to Detective Waller was required because Bogard raised no genuine issue of voluntariness that the State was required to refute. We wholeheartedly concur with the language found in Day, supra, that "the shield provided by Miranda is not to be perverted [in]to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." Day, 382 So.2d at 1074.

4. Burglary of an Inhabited Dwelling: Weight of Evidence
Count I of Bogard's multi-count indictment charged the defendant with violating the provisions of Miss. Code Ann. § 97-17-23, which defines the crime of burglary during the night of an inhabited dwelling while armed with a deadly weapon. This statute requires proof that the dwelling house was occupied at the time of entry. The maximum penalty prescribed for the offense is imprisonment for not more than twenty-five (25) years.
Bogard's conviction of armed burglary of an inhabited dwelling was against the overwhelming weight of the evidence because the witnesses for the State all testified that Bogard was already hiding inside the house at the time they entered. Essential to a valid conviction for armed burglary of an inhabited dwelling is proof that the dwelling house was occupied by some human being at the time of the burglar's entry. Newburn v. State, 205 So.2d 260, 267 (Miss. 1967). No evidence was presented in this case from which a jury could find that Bogard entered the dwelling house at the time it was occupied by any human being.
This point was specifically raised as ground three (3) in Bogard's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In ruling on this matter, the circuit judge found that the evidence was sufficient to support a finding of guilty of burglary of an unoccupied dwelling house. The court reasoned that since Bogard had been indicted as an habitual offender pursuant to Miss. Code Ann. § 99-19-83 his sentence (life imprisonment without the benefit of parole) would have been the same. Accordingly, the judge concluded that the grade of burglary was inconsequential in this case. The court deemed any error "absolutely harmless because the lesser crime of burglary would have resulted in the same sentence as the enhanced crime of burglary of an inhabited dwelling."
The grade of the offense, however, could take on added significance in a post-conviction *1320 environment should it become necessary, for some reason unforeseen, to resentence Bogard under the provisions of Miss. Code Ann. § 99-19-81. By virtue of Miss. Code Ann. § 97-17-19, the maximum penalty for burglary of an uninhabited dwelling is ten (10) years as opposed to twenty-five (25) years under § 97-17-23 for armed burglary of an inhabited dwelling during the night.
The jury, by its verdict, necessarily found Bogard guilty of burglary of a dwelling house, and the proof clearly supports a conviction for the lesser included offense of burglary of an unoccupied dwelling. "A jury verdict may be affirmed as to guilt but the case remanded for resentencing when the proof is not sufficient to sustain a conviction for the crime charged but is sufficient to sustain a conviction for a lesser included offense." Biles v. State, 338 So.2d 1004, 1005 (Miss. 1976). See also Anderson v. State, 290 So.2d 628, 629 (Miss. 1974). We, therefore, decline Bogard's invitation to reverse and render; rather, we affirm Bogard's conviction of burglary of an unoccupied dwelling house and remand for resentencing under Miss. Code Ann. § 97-17-19 and § 99-19-83.

5. Sentencing as an Habitual Offender Under § 99-19-83
By virtue of the provisions of Miss. Code Ann. § 99-19-83, the State must prove that a defendant has not only been at least twice previously convicted but that he has been sentenced to and has served separate terms of one (1) year or more in any state and/or federal penal institution. [emphasis supplied]. Bogard contends the trial judge erred in sentencing him to three (3) consecutive terms of life imprisonment without the benefit of probation or parole because the sentences he served in the wake of his prior convictions were served concurrently.
In King v. State, 527 So.2d 641, 645 (Miss. 1988), the identical question was presented squarely to this Court and decided adversely to Bogard's position. We stated:
The question, thus, is whether serving one year or more on concurrent sentences for separate convictions amounts to serving more than one year on each sentence. We hold that it does. [emphasis supplied].
Bogard's indictment in this cause alleged that he was an habitual offender within the meaning and purview of § 99-19-83. The underlying felonies used for sentence enhancement were forcible rape, armed robbery, and aggravated assault. All three prior felony convictions occurred in Lafayette County, and the indictment charged that Bogard served separate terms of one (1) year or more on each sentence.
During the sentencing proceeding, the State established that Bogard had been thrice previously convicted of violent offenses. On November 4, 1977, Bogard had entered voluntary guilty pleas to rape, armed robbery, and aggravated assault. The rape and armed robbery both took place on October 19, 1977, while the aggravated assault occurred on October 22, 1977.
The indictment for rape alleged that Bogard ravished and carnally knew K.A. A separate indictment for armed robbery alleged that Bogard took a watch valued at $100.00 and $3.00 in cash from Robin Roberts at the point of a rifle. A third indictment for aggravated assault alleged that Bogard knowingly and purposely attempted to cause bodily injury to Mr. and Mrs. Billy Mustin by shooting at them with a .22 caliber rifle.
Following his guilty pleas, Bogard was sentenced in three (3) separate and individual sentencing orders to serve twenty (20) years for the rape, fifteen (15) years for the armed robbery, and five (5) years for the aggravated assault. All three sentences were to run and to be served concurrently. Bogard actually served ten (10) years, seven (7) months, and fourteen (14) days on his concurrent sentences.
Today, we reinforce our holding in King, supra, that serving one year or more on concurrent sentences for separate convictions arising out of separate incidents amounts to serving more than one year on each sentence for the purpose of enhanced sentencing under § 99-19-83 which applies to defendants "who shall have been sentenced to and served separate terms of one (1) year or more ..." To hold otherwise *1321 would discourage the imposition of concurrent sentences when warranted under the circumstances.
The trial judge was correct in his ruling that Bogard served ten (10) years, seven (7) months, and fifteen (15) days on his twenty (20) year sentence for forcible rape; ten (10) years, seven (7) months, and fifteen (15) days on his fifteen (15) year sentence for armed robbery; and five (5) years on his five (5) year sentence for aggravated assault. By virtue of Miss. Code Ann. § 99-19-21, the legislature has permitted a defendant to serve multiple sentences at the same time. Here Bogard merely served, at one time, a portion of his 20 year separate sentence for rape, a portion of his 15 year separate sentence for armed robbery, and all of his 5 year separate sentence for aggravated assault.
Bogard relies upon two post-King cases, Nathan v. State, 552 So.2d 99 (Miss. 1989) and Benson v. State, 551 So.2d 188 (Miss. 1989). Both Nathan and Benson were originally indicted under § 99-19-83. The predominant issue in those two cases was the propriety of the defendants' sentences imposed pursuant to § 99-19-81 after the trial judges had found the State's proof failed to meet the requirements of § 99-19-83. Admittedly, the circuit judges in both Nathan and Benson interpreted § 99-19-83 in a manner consistent with the position taken by Bogard in his appeal to this Court. Such position, however, is squarely at odds with our holding in King, supra, which was decided after the trials of both Nathan and Benson.
In the Nathan decision we noted that Nathan had served previously imposed sentences of eight (8) years, three (3) years, three (3) years, and three (3) years. His concurrent sentences were imposed on July 28, 1981, and Nathan was released from confinement on October 16, 1983, two (2) years and three (3) months later. In what, at best, was simply dicta, we pointed out that Nathan's lawyer successfully argued in the trial court "that the State had not proven that Nathan served separate sentences on each of the prior convictions as required by § 99-19-83." Nathan, 552 So.2d at 107.
The Benson case, while providing a more compelling argument in Bogard's favor, demonstrates that reliance upon a headnote alone without a careful analysis of the decisional text can be both misleading and imprudent. In Benson the trial judge, in interpreting § 99-19-83, found that the sentencing of Benson under § 99-19-83 would be improper because "he has not served separate terms of one year or more on each of these charges, as concurrent sentences would have been served simultaneously and not separate." Benson, 551 So.2d at 196. The trial judge then found that sentencing under § 99-19-81 was permissible because the defendant had been "properly noticed in the indictment" that the State was charging him as an habitual offender. Id., at 196.
This Court stated in its written opinion that the trial court's ruling embodied a correct interpretation of the law. We were referring, however, to that portion of the trial court's ruling which found that sentencing under the milder provisions of § 99-19-81 was permissible. This fact is made evident by our dual citations to Yates v. State, 396 So.2d 629 (Miss. 1981), and Ellis v. State, 520 So.2d 495 (Miss. 1988), both of which held that where the State's proof falls short under § 99-19-83, a defendant may be sentenced under the provisions of § 99-19-81. It is also fortified by our observation that Benson received "adequate notice" that he was being charged as an habitual offender. Benson, 551 So.2d at 196-97.
Accordingly, we reaffirm our holding in King, supra, that serving one year or more on concurrent sentences imposed for separate convictions arising out of separate incidents at different times amounts to serving more than one year on each sentence.
Bogard raises a number of other issues dealing with (1) the proportionality of his sentence as an habitual offender to three (3) consecutive terms of life imprisonment; (2) the sufficiency and weight of the evidence used to convict him of aggravated assault; (3) the admissibility of certain "blood" testimony elicited from Oxford Police Detective, Andy Waller; and (4) allegedly improper and inflammatory closing argument by the prosecuting attorney.
*1322 We have carefully examined these issues and conclude that none of them merit either discussion or reversal. Williams v. State, 595 So.2d 1299, 1310 (Miss. 1992); Turner v. State, 573 So.2d 1340, 1343 (Miss. 1990); Morea v. State, 329 So.2d 527 (Miss. 1976).
Bogard's appeal is affirmed in all respects save for his conviction of burglary of an inhabited dwelling house which is reversed and remanded for resentencing for burglary of an unoccupied dwelling.
COUNT I: REVERSED AND REMANDED FOR RESENTENCING FOR BURGLARY OF AN UNOCCUPIED DWELLING AS AN HABITUAL OFFENDER. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO LIFE IMPRISONMENT AS AN HABITUAL OFFENDER, AFFIRMED. COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF LIFE IMPRISONMENT AS AN HABITUAL OFFENDER, AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT II.
HAWKINS, C.J., PRATHER, P.J., and BANKS, ROBERTS and SMITH, JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and McRAE, J.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
SULLIVAN, Justice, dissenting:
I dissent from the majority's finding that the trial judge was correct in permitting the prosecution to impeach Bogard's credibility as a witness by questioning him during cross-examination about his 1977 conviction for armed robbery because there was no showing that this conviction has any probative value relevant to Bogard's propensity for truthfulness while under oath.
The majority correctly states that impeachment by evidence of conviction of a crime is governed by M.R.E. 609 and that this Rule allows use of prior convictions only for attacking the credibility of a witness, including the defendant. McInnis v. State, 527 So.2d 84, 88 (Miss. 1988). As the trial judge performed an on-the-record balancing of the Peterson[1] factors, I agree with the majority that Bogard's prior armed robbery conviction was admitted for impeachment pursuant to M.R.E. 609(a)(1). Under this section of the Rule, the State has a threshold burden of establishing prima facie that the prior conviction has probative value, i.e., that it is relevant to the offender's credibility. Johnson v. Fargo, 604 So.2d 306, 310 (Miss. 1992); McInnis, 527 So.2d at 88. Only after this burden has been met does the inquiry extend to a balancing of the prejudicial versus probative value of the conviction.
"The issue with respect to which the prior conviction must be relevant, if it is to be admissible [pursuant to M.R.E. 609(a)(1)], is the defendant's propensity for truthfulness as a witness." McInnis, 527 So.2d at 88. The majority concludes that the State showed Bogard's prior armed robbery conviction was relevant to his propensity for truthfulness as a witness, in other words the State met its threshold burden of establishing the probative value of the armed robbery, by introducing a certified copy of the indictment, judgment, and commitment order regarding the armed robbery. The indictment and commitment paper reflected that Bogard had stolen another's money and personal property, therefore, according to the majority, this conviction has "some intrinsic probative value regarding Bogard's propensity for truthfulness while under oath." I disagree.
In my view, only offenses in the nature of crimen falsi have intrinsic probative value regarding the offender's propensity for truthfulness while under oath. Concerning these offenses, the dishonesty or the false statement is the crime, or at least an element of the crime. See Smallwood v. State, 584 So.2d 733, 741 (Miss. 1991) (perjury requires stringent proof of falsity of accused's statement); Miss. Code Ann. § 97-9-59 (1972) (false affirmation is element of perjury); Greenlee v. Mitchell, 607 So.2d 97, 110 (Miss. 1992) (false representation is element of *1323 fraud); Bunkley v. State, 495 So.2d 1, 3 n. 1 (Miss. 1986) (fraudulent concealment is element of embezzlement); Allred v. State, 605 So.2d 758, 761 (Miss. 1992) (false representation is element of false pretenses). Our Rules recognize the intrinsic probative value of these crimes regarding the offender's propensity for truthfulness while under oath by providing that admission of conviction of these offenses for purposes of impeachment is not discretionary with the court; such convictions are always admitted because peculiarly probative of credibility. M.R.E. 609(a)(2). Armed robbery does not involve any element of deceit, untruthfulness, or falsification, so can not have intrinsic probative value on the issue of the offender's propensity for truthfulness. See Miss. Code Ann. § 97-3-79 (Supp. 1992).
It is precisely this lack of intrinsic probative value that creates the requirement of a prima facie showing of probative value, relative to the offender's propensity for truthfulness under oath, before evidence of a prior conviction is admissible for impeachment under M.R.E. 609(a)(1). In sharp contrast, evidence of any prior conviction has inherent prejudicial value  once a convicted criminal, always a criminal. Consequently, when evidence of a prior conviction is offered to impeach under M.R.E. 609(a)(1), the prejudicial effect is a given. But "until this prima facie showing [of probative value of the prior conviction] is made by the prosecution, there is nothing for the Circuit Court to balance or weigh against the prejudicial effect." McInnis, 527 So.2d at 88. See also Jordan v. State, 592 So.2d 522, 524 (Miss. 1991).
Careful review of this record reveals no countervailing probative value of Bogard's prior armed robbery conviction to offset its prejudicial effect. In an attempt to meet its threshold burden, the State asserted that as a crime of violence, the armed robbery conviction would be probative on the issue of whether Bogard was acting in true self-defense; that the jury should know Bogard had been prone to acts of violence in the past; that a prior conviction of armed robbery would be highly probative of credibility; and that Bogard's past shows his theory of self-defense to be a lie. The State additionally provided the court with an opinion from the D.C. Circuit which says stealing is inherently probative of credibility. Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir.1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). Contrary to Gordon, the majority of federal courts considering the question have found theft crimes are not crimes of dishonesty as contemplated by M.R.E. 609(a)(2). Townsend v. State, 605 So.2d 767, 770 (Miss. 1992), citing Joseph & Saltzburg, Evidence in America, Ch. 43, p. 14 (1987). Furthermore, this Court has found stealing is not inherently probative of credibility. See Johnston v. State, 618 So.2d 90 (Miss. 1993) [robbery not substantiated by conviction not probative of truthfulness; M.R.E. 608(b)]; Stevenson v. State, 606 So.2d 1103, 1107-08 (Miss. 1992) [we declined to hold the trial court in error for failure to perform an on-the-record balancing of probative versus prejudicial value of prior burglary conviction because there had been no threshold showing that burglary bears upon the offender's propensity for truthfulness; M.R.E. 609(a)(1)]; Townsend, 605 So.2d at 770 [burglary not ordinarily admissible as a crime involving dishonesty; M.R.E. 609(a)(2)].
The State provided no extrinsic evidence tending to show that Bogard's prior armed robbery conviction would be relevant to the issue of his credibility. If Bogard had staged an armed robbery of his employer to cover up a cash shortage for which he was responsible, that might make his armed robbery conviction probative of his credibility. However, the fact that Bogard committed armed robbery has no per se relevance to his propensity for truthfulness. And without a prima facie showing of probative value, there was nothing for the trial judge to weigh against the prejudicial effect of Bogard's prior conviction.
Although relevancy and admissibility of evidence are largely within the discretion of the trial court, this discretion must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston v. State, 567 So.2d 237, 238 (Miss. 1990). Here the trial court strayed outside the boundaries provided by our Rules, resulting in admission of *1324 evidence which was substantially prejudicial to Bogard. I would, therefore, reverse and remand for a new trial.
DAN M. LEE, P.J., and McRAE, J., join this dissent.
McRAE, Justice, dissenting:
I agree with Justice Sullivan's dissent. I write simply to state that Townsend v. State, 605 So.2d 767, 770 (Miss. 1992), and Stevenson v. State, 606 So.2d 1103 (Miss. 1992), are controlling and, without these cases being overruled, we should follow the same.
SULLIVAN, J., joins this opinion.
NOTES
[1] Although Bogard's conviction for armed robbery occurred in 1977, the ten (10) year time limitation found in 609(b) is not implicated in this case.
[2] Crimes historically classified as "crimen falsi" include crimes in the nature of perjury, subornation of perjury, forgery or false statement, criminal fraud, embezzlement, or false pretense which involve some element of deceit, untruthfulness, or falsification bearing directly on one's propensity to testify truthfully. Wicks v. State, 535 A.2d 459, 461-62 (Ct.App.Md. 1988).
[1] Peterson v. State, 518 So.2d 632, 636-37 (Miss. 1987).